T.C. Memo. 1997-229


UNITED STATES TAX COURT


THEODORE S. PROKOPOV AND GEORGINE O. PROKOPOV, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 8103-95.                    Filed May 13, 1997.


Theodore S. Prokopov and Georgine O. Prokopov, pro se.

Robert W. Dillard and Stephen R. Takeuchi, for respondent.


MEMORANDUM OPINION


WRIGHT, Judge:  This matter is before the Court on
respondent's motion for summary judgment pursuant to Rule 121.[1]
Respondent contends that the Court should grant her motion

_____

[1]Unless otherwise indicated, all section references are to
the Internal Revenue Code, and all Rule references are to the Tax
Court Rules of Practice and Procedure.

because this case contains no genuine issue as to any material fact and that judgment should be issued as a matter of law.

Background

Respondent determined a deficiency in petitioners' Federal income tax for taxable year 1992 in the amount of $18,257. A notice of deficiency was issued on May 11, 1995.

Respondent filed her above-referenced motion for summary judgment (respondent's motion) on July 8, 1996. On July 12, 1996, the Court ordered (the Court's order) petitioners to show cause in writing on or before August 19, 1996, as to why respondent's motion should not be granted. Petitioners filed their response (petitioners' response) to the Court's order on July 29, 1996.

George T. Ogden died testate on July 13, 1981. His wife, Lucile G. Ogden, served as the personal representative of his estate. Mr. Ogden's will was prepared by William M. Williams (Mr. Williams) and was executed on December 24, 1979. Mr. Ogden's will was probated, and his estate was distributed according to its provisions.

Mr. Ogden's will created a testamentary trust (the trust) and provided that Mrs. Ogden was to receive the trust's income during her lifetime. The will also created two powers with respect to the trust in favor of Mrs. Ogden. The first power provided Mrs. Ogden with a noncumulative annual right to withdraw the greater of $5,000 or 5 percent of the trust's corpus. The

second power provided Mrs. Ogden with a discretionary "special" power of appointment, permitting her to appoint the trust's principal to any of Mr. Ogden's lineal descendants or their spouses.[2]

Shortly after his death on July 13, 1981, Mr. Ogden's estate transferred certain real property and stock to the trust. Among the property transferred was a real property located in North Myrtle Beach, South Carolina known as the Oak Den Trailer Court (Oak Den). Oak Den had a fair market value of $259,000 on the date of Mr. Ogden's death. The executor of Mr. Ogden's estate did not elect the alternate valuation date under section 2032.

Mrs. Ogden died testate on May 11, 1990. Her will had been prepared by Mr. Williams and was executed on May 14, 1982. Mrs. Ogden's will was probated, and her estate was distributed according to its provisions. Mr. Ogden's will directed that the trust's corpus at the time of Mrs. Ogden's death was to be distributed according to Mrs. Ogden's will.[3]

---

[2]Specifically, the provision creating the special power of appointment reads as follows:

My wife, Lucille G. Ogden, shall have the power during her lifetime * * * to appoint any portion or all of the principal sum of the trust to any of my lineal descendants or spouses of lineal descendants, in such amounts, outright or upon such trust, terms and conditions as she shall elect. Under no circumstances may my wife exercise this power in favor of herself, her creditors, her estate or creditors of her estate.

[3]Specifically, Mr. Ogden's will reads:

(continued...)

Mr. Williams, Peter G. Ogden, and petitioner-wife (Mrs. Prokopov) served as co-executors of Mrs. Ogden's estate.[4] At the time of her death, Mrs. Ogden had not exercised her noncumulative right to withdraw the greater of $5,000 or 5 percent of the value of the trust's corpus. As of May 11, 1990, the date of Mrs. Ogden's death, Oak Den had a fair market value of $600,000, and the trust's corpus had a fair market value of $755,759.14. In computing her estate tax liability, the executors of Mrs. Ogden's estate included 5 percent of the fair market value of the trust's corpus, as of May 11, 1990, in her gross estate.

In 1992, Oak Den was sold to Ryan's Family Steak House, Inc. (RFSH) for $600,000. For purposes of calculating the trust's gain on the sale of Oak Den, Mr. Williams determined that Oak Den had an adjusted basis of $276,050.[5] Expenses associated with

---

[3](...continued)
> * * * Upon the death of my wife, [], the remaining principal or corpus of the said trust shall be distributed as my wife shall direct in her will by specifically referring to and exercising the special power of appointment in her last will and testament; provided, however, that in no event may she exercise this power in favor of herself, her creditors, her estate, or the creditors of her estate; provided further, however, that this power shall be exercisable only in favor of my lineal descendants or spouses of lineal descendants. * * *

[4]Mrs. Prokopov is the daughter of Mr. and Mrs. Ogden.

[5]In deriving this figure, Mr. Williams first reduced Oak Den's fair market value at the time of Mr. Ogden's death by 5
(continued...)

the sale of Oak Den totaled $64,090.45.[6]  In light of the aforementioned adjusted basis and expenses, the trust reported a gain of $259,859.55 from the sale of Oak Den on its 1992 income tax return.  The trust also reported interest and rental income for 1992 in the amounts of $921.13 and $5,085.41, respectively. After accounting for State income taxes in the amount of $18,217.50, net taxable income to the trust's beneficiaries for 1992 was $247,648.59.

Mrs. Prokopov was a 30-percent beneficiary in the trust. Mr. Williams determined that Mrs. Prokopov's share of trust income for 1992 was $74,294.57.  He informed her of such amount on February 25, 1993.  The trust also issued a Schedule K-1 to Mrs. Prokopov.

Petitioners reported $1,525.62 as income from the trust on their 1992 Federal income tax return.  Respondent subsequently

---

[5](...continued) percent.  He then increased the result by 5 percent of Oak Den's fair market value as of Mrs. Ogden's death.  The calculation is as follows:

($259,000 * 95%) + ($600,000 * 5%)= $276,050

[6]The expenses consisted of attorney's fees of $9,482.45, commissions of $49,980, cleanup costs of $2,750, surveying costs of $1,625, deed stamp fees of $240, and miscellaneous costs of $13.

determined that petitioners failed to report $72,768.95[7] of Mrs. Prokopov's distributive share of trust income for 1992.

Discussion

Summary judgment is intended to expedite litigation and avoid unnecessary and expensive trials. Florida Peach Corp. v. Commissioner, 90 T.C. 678, 681 (1988). It is appropriate if the pleadings and other materials show that there is no genuine issue as to any material fact, and a decision may be rendered as a matter of law. Rule 121(b); Naftel v. Commissioner, 85 T.C. 527, 529 (1985). The moving party bears the burden of proving that summary judgment is appropriate. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Espinoza v. Commissioner, 78 T.C. 412, 416 (1982). When confronted with a motion for summary judgment, the Court will construe factual inferences in a manner most favorable to the opposing party. Dahlstrom v. Commissioner, 85 T.C. 812, 821 (1985).

The sole issue presented by this case involves Oak Den's adjusted basis on the date it was sold to RFSH.[8] Petitioners maintain that section 1014(a) and (b) operate to give Oak Den a

---

[7]In the notice of deficiency, respondent determined that petitioners failed to report $77,958 of Mrs. Prokopov's distributive share of trust income for 1992. Respondent now concedes that the correct amount is $72,768.95.

[8]In their response to the Court's order, petitioners introduce for the first time a contention that a portion of Mrs. Ogden's estate was subjected to double taxation. We decline to address this argument as it is not now properly before us.

stepped-up basis of $600,000. Specifically, it is petitioners'
argument that the trust's corpus, including Oak Den, became
property of Mrs. Ogden's gross estate upon her death, and that in
becoming part of said gross estate obtained a stepped-up basis by
operation of section 1014. In support of their contention,
petitioners advance two arguments. With respect to their first
argument, petitioners point to a provision contained in Mr.
Ogden's will and contend that the language of such provision
served to transfer the trust's corpus to Mrs. Ogden's estate on
the date of her death.[9] They explain that subparagraph (d) of
the FIFTH paragraph of Mr. Ogden's will provides:

> Upon the death of my wife,[], the remaining principal
> or corpus of the said trust shall be distributed as my
> wife shall direct in her will * * *

Petitioners then explain that Mrs. Ogden's will effectively
distributed the property formerly contained in the trust to the
beneficiaries of her estate. As support for this explanation,
petitioners point to language contained in the FOURTH paragraph
of Mrs. Ogden's will. Such paragraph provides:

> All the rest, residue and remainder of my property,
> both real and personal, of whatsoever nature and
> wheresoever situate of which I may die seized or to
> which I may be entitled, or over which at the time of

---

[9]In advancing this argument, petitioners maintain that Mr.
Ogden's will contains certain errors that the Court must adjust
before it can analyze properly the interrelationship between Mr.
and Mrs. Ogden's wills. Even if this were the appropriate forum
for petitioners to contest aspects of Mr. Ogden's will, which it
is not, petitioners' argument is seriously flawed and must be
rejected.

> my death I may have a power of appointment or disposal,
> I direct my Executor to divide said residuary estate
> * * *  as follows * * *

It is the interrelationship of the two provisions cited immediately above that petitioners rely upon in advancing their argument that there is "no doubt that [Mrs. Ogden] really distributed the Trust together with her estate."

Petitioners also argue[10] that the "special" power of appointment that Mrs. Ogden possessed with respect to the trust converted to a "general" power of appointment on the date of Mrs. Ogden's death.[11]  The implication drawn from this argument is that section 2041(a) caused the whole of the trust's corpus to be included in Mrs. Ogden's gross estate.

Respondent maintains that apart from the 5 percent over which Mrs. Ogden had a noncumulative right of withdrawal at her death, Oak Den does not receive a stepped-up basis because it did not become part of Mrs. Ogden's gross estate.  According to respondent, Oak Den had an adjusted basis of $276,050[12] when it was sold to RFSH.  We agree with respondent.

---

[10]This argument is partially express and partially implied by the language used in petitioners' response.

[11]A "special" power of appointment is a power of appointment other than a "general" power of appointment.  A "general" power of appointment is textually defined infra.

[12]Petitioners do not dispute the computation of this figure. Accordingly, we will not address such computation and will decide whether Oak Den's adjusted basis on the date it was sold to RFSH was $276,050 or $600,000.

The basis of property in the hands of a person acquiring such property from a decedent is generally its fair market value as of the date of the decedent's death. Sec. 1014(a); <u>Brewster v. Gage</u>, 280 U.S. 327 (1930). Moreover, section 2041 provides generally that a decedent's gross estate shall include the value of all property subject to a "general" power of appointment. Sec. 2041(a)(2). A "general" power of appointment is a power which is exercisable in favor of the decedent, the decedent's estate, the creditors of the decedent, or the creditors of the decedent's estate.[13] Sec. 2041(b)(1). A power of appointment is not a "general" power of appointment if it is either (1) exercisable only in favor of one or more designated persons or classes other than the decedent, the decedent's estate, the creditors of the decedent, or the creditors of the decedent's estate, or (2) expressly not exercisable in favor of the decedent, the decedent's estate, the creditors of the decedent, or the creditors of the decedent's estate. Sec. 20.2041-1(c)(1), Estate Tax Regs.

When Oak Den was transferred to the trust pursuant to the terms of Mr. Ogden's will, it obtained a basis of $259,000. Apart from Mrs. Ogden's noncumulative power to withdraw 5 percent of the trust's corpus, which resulted in the inclusion of

---

[13]Secs. 2041(b)(1)(A), (B), and (C) set forth three exceptions to this definition, but none applies in the instant case.

such 5 percent in her gross estate, see Estate of Kurz v. Commissioner, 101 T.C. 44 (1993), affd. 68 F.3d 1027 (7th Cir. 1995), nothing occurred subsequent to that transfer, whether by the operative instruments identified in this case or by operation of law, to effect a transfer of the remaining 95 percent of Oak Den from the trust to Mrs. Ogden's estate.  To be sure, Mrs. Ogden's "special" power of appointment over the trust's corpus expressly precluded such a transfer, and petitioners' argument to the contrary is without merit.  Similarly, petitioners' argument that Mrs. Ogden's "special" power of appointment was transformed into a "general" power of appointment on the date of her death is also without merit.[14]

When Mrs. Ogden died, the trust continued to exist and Oak Den remained as part of its corpus.  Accordingly, petitioners' argument that Oak Den had an adjusted basis of $600,000 on the date of its sale must be rejected.

Respondent has established that this case contains no genuine issue as to any material fact and that she is entitled to

---

[14]It is interesting to note that petitioners advance inconsistent arguments in their response to the Court's order. As previously noted, we decline to address a "double taxation" issue that petitioners advanced in their response because it was not raised in their petition.  With respect to that issue, however, petitioners maintain in paragraph 5 of their response, that Oak Den did not enter Mrs. Ogden's estate.  Now, with respect to Oak Den's basis on the date of its sale to RFSH, petitioners contend that Oak Den had become part of Mrs. Ogden's estate.

summary judgment as a matter of law.  Accordingly, we grant respondent's motion for summary judgment.

<u>An appropriate order</u>

<u>and decision will be entered.</u>